IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00144-PAB
Civil Case No. 22-cv-02641-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JALIL LEMASON ROBINSON,

    Defendant.

_____

## ORDER
_____

This matter comes before the Court on defendant Jalil Robinson's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC § 2255 [Docket No. 215]. The government has filed a response opposing the motion.  Docket No. 219.  Mr. Robinson filed a reply.  Docket No. 220.  The Court construes Mr. Robinson's filings liberally because he is not represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court will not act as a *pro se* litigant's advocate.  *See Hall*, 935 F.2d at 1110.  For the reasons discussed below, the Court denies the motion. Necessary

## I. FACTUAL BACKGROUND

Investigator Craig Tangeman, an investigator with the Arapahoe County Sherriff's Office assigned to work with the FBI Innocence Lost Task Force, created a fictional social media profile for an eighteen-year-old woman named Brooke on a dating website. *United States v. Robinson*, 993 F.3d 839, 843, 846 (10th Cir. 2021).  Mr. Robinson

contacted "Brooke," propositioning her to become his "business partner" as a prostitute. *Id.* at 843. "Brooke" later informed Mr. Robinson that she was, in fact, a seventeen-year-old named Nikki. *Id.* "Nikki" was really Investigator Tangeman. *Id.* Despite learning "Nikki's" age, Mr. Robinson continued to pursue plans to have "Nikki" work for him as a prostitute. *Id.* "Nikki" agreed to travel from Denver to meet Mr. Robinson in California. *Id.* at 843–44. When Mr. Robinson arrived at the California bus terminal to meet "Nikki," federal law enforcement agents arrested him. *Id.* at 844. Mr. Robinson was indicted for attempted sex trafficking of a child, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a), Count 1, and for transporting an individual to engage in prostitution, in violation of 18 U.S.C. § 2421, Count 2. Docket No. 80.

## II. PROCEDURAL HISTORY

On December 6, 2018, a jury found Mr. Robinson guilty of both counts. Docket No. 144. On July 12, 2019, the Court sentenced Mr. Robinson to 188 months imprisonment as to Count 1 and 120 months as to Count 2, to be served concurrently. Docket No. 191 at 2. Judgment was entered on July 18, 2019. Docket No. 194. The Tenth Circuit affirmed the judgment on April 2, 2021, and the Supreme Court denied certiorari on October 4, 2021. Docket Nos. 209, 212.

On October 2, 2022, Mr. Robinson mailed his motion pursuant to 28 U.S.C. § 2255. Docket No. 215 at 10. Section 2255 generally requires that a defendant file a petition within one year of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). A conviction is final when certiorari is denied. *United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006). Mr. Robinson's motion is timely. *See* 28 U.S.C. § 2255(f)(1).

## III. ANALYSIS

In his § 2255 motion, Mr. Robinson argues that he received ineffective assistance of counsel. Docket No. 215 at 6–8. Mr. Robinson claims that his counsel was ineffective because (1) he failed to request additional jurors due to the limited number of Black individuals in the jury pool and he did not, either during voir dire or during other portions of the trial, inform the jury of cultural issues regarding the meaning of the word "pimp"; (2) he failed to raise the issue of sentencing entrapment, failed to seek a lesser-included offense instruction, and did not investigate whether Mr. Robinson could get the benefit of the plea bargain such as was offered in a similar case, Case No. 18-cr-00265-RM; and (3) he failed to subpoena a witness from the social media sites Hi5 or Tagged to testify about the websites' age restriction policies. *Id.*

To establish ineffective assistance of counsel, Mr. Robinson must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court is not required to address both prongs of the *Strickland* test if the defendant fails to make a sufficient showing of one. *Frederick v. Quick*, 79 F.4th 1090, 1105 (10th Cir. 2023).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. There is "a strong presumption" that counsel's performance falls within the "wide range of reasonable professional assistance." *Id*. Mr. Robinson bears the burden of overcoming this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "To demonstrate constitutional deficiency, [the defendant] must show that counsel's performance was

3

completely unreasonable, not simply wrong." *Meadows v. Lind*, 996 F.3d 1067, 1075 (10th Cir. 2021) (citation omitted). "To show prejudice the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Honie v. Powell*, 58 F.4th 1173, 1189 (10th Cir. 2023) (alternation and citation omitted).

### A. Jury Related Challenges

Mr. Robinson's first argument in regard to the jury is that his counsel was ineffective because he failed to request "an additional jury pooling," which violated his Fifth Amendment right to be tried before a jury of his peers. Docket No. 215 at 6. Mr. Robinson states that there were only two Black members of the jury pool and that there was only one Black member of the jury in his case. *Id.*

If the Court interprets Mr. Robinson's motion to claim that the venire was improperly constituted in violation of the Sixth Amendment, Mr. Robinson's argument fails. Mr. Robinson is not entitled to "a jury of 'any particular composition' and the jury actually chosen does not have to 'mirror the community.'" *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)). Rather, the "Sixth Amendment guarantee of an impartial jury is violated if the jury selection system does not draw its jury members from a fair cross section of the community." *United States v. Frazier*, 429 F. App'x 730, 733 (10th Cir. 2011) (unpublished) (alternation and citation omitted). "To establish a Sixth Amendment violation, Defendant must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in jury venires is not

4

fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 733–34 (citation omitted). "Defendant bears the burden of producing evidence to support his constitutional challenge." *Id.* at 734. Mr. Robinson has produced no evidence to support a claim that the venire was not drawn from a fair cross-section of the community. His argument that the racial composition of the venire violated his constitutional rights therefore fails. For the same reason, Mr. Robinson has not shown that he received ineffective assistance of counsel based on the fact that his attorney did not advance the constitutional argument he now makes.

Mr. Robinson also claims that his attorney "allowed voire [sic] dire to conclude without ensureing [sic] Defendant received a jury including members likely to understand" the possible range of meanings of the word "pimp." Docket No. 215 at 6. Mr. Robinson states that "certain vernacular uses of language (in particular, the word 'pimp') are common in Black/African-American culture" and that "specific cultural knowledge was necessary in order to understand the possible range of use of the word 'pimp.'" *Id.*

However, Mr. Robinson does not have a right to a jury composed of persons with a certain understanding of a word, such as "pimp." Moreover, to the extent that Mr. Robinson is claiming that his attorney had an obligation to explain the possible range of uses of the word "pimp" during voir dire, he misunderstands the limits imposed on voir dire by the Court, namely, to ask questions of the proposed jurors rather than making statements to them. Nevertheless, his attorney asked one of the prospective jurors if he could keep an open mind regarding pimps and pimping and he said that he could.

5

Docket No. 166 at 107:6–12.  Defense counsel then asked the entire group whether anyone disagreed with the last juror and no one raised a hand.  *Id*. at 107:13–108:7.  The Court finds that Mr. Robinson's attorney acted reasonably in seeking assurance that the jurors would keep an open mind about the meaning of the word and how pimps behaved and in not attempting to communicate the various meanings of "pimp" during voir dire, especially given the fact that it would have had to be done without making statements to the jury.

Finally, Mr. Robinson criticizes his attorney for not specifically informing the jury of the range of uses of the word "pimp" at later stages of the trial.  Docket No. 215 at 6.  Mr. Robinson acknowledges that his attorney cross-examined Investigator Tangeman about the different meanings of "pimp," but asserts that his attorney did not specifically inform the jury regarding that topic.  *Id.*  The Court rejects this argument.  Once again, his attorney was not a witness and could not directly inform the jury of facts.

More importantly, although Mr. Robinson asserts that there are cultural nuances or alternative meanings to the word "pimp" in the Black community, *id.*, the evidence presented at trial demonstrates that Mr. Robinson's use of the word "pimp" or "pimping" was synonymous with the acts that constituted the crimes with which he was charged, i.e., prostituting another person.  Mr. Robinson took the stand in his defense, Docket No. 169 at 54, 410:7, and testified on direct that:

> Q: With regard to pimping and the pimping culture that Agent Tangeman talked about, and he defined I believe pimping to mean that it's a person who gets money from a prostitute or that's a general definition of that, was that your intent, that you were possibly going to do that for Nikki or Brooke?
>
> A. Can you repeat that? It was kind of drawn out.

6

> Q. Was it -- at any time during your messaging back and forth with Nikki/Brooke, was it at any time your intent that at some point in the future you would receive money from her for placing her into -- in any kind of an escort, dancing --
>
> A. Yes.

*Id.* at 76, 432:15–25.  Mr. Robinson further testified on cross-examination about his messages to "Nikki" as follows:

> Q: This is where Nikki is saying, you know, I am just stepping my foot into these water for the first time.  I want to know what it is and know what I am doing and we all want to be comfortable.  So she says:  You know what I mean.
>
> A. Okay.  Correct.
>
> Q. And you say:  Yeah.  Well, let me let you know we're in this game, you know what I'm saying, where people do call it, they call it pimping.
>
> A. Right. . . .
>
> Q: So that's the world we are talking about when you say the outside calls it pimping.  So the outside looking in would understand that to be someone like yourself --
>
> A. Okay.
>
> Q. -- getting money from other women committing commercial sex acts?
>
> A. Yes.

*Id.* at 116–17, 472:5–473:18.  The Court finds that Mr. Robinson has not shown prejudice by any failure of his attorney to ensure that the members of the jury were aware of different uses of the term "pimp" or "pimping" in Black culture because Mr. Robinson repeatedly agreed with the traditional definition of what that term meant in the context of his conversations with Nikki/Brooke.

### B. **Lesser-Included Offense and Plea Bargain**

The Court construes Mr. Robinson's motion to make the following arguments in the section of his motion titled "Ground II": (1) his counsel should have argued that he

7

receive a reduced sentence under a sentencing entrapment defense; (2) his counsel should have requested a lesser-included offense instruction; and (3) his counsel should have investigated the circumstances of the defendant in Case No. 18-cr-00265-RM, who was similarly situated, but who was allowed to plead guilty and receive a sentence of only one year.  Docket No. 215 at 7; Docket No. 220 at 5.

Mr. Robinson's argument that he received ineffective assistance of counsel because his counsel should have argued that the government engaged in sentencing entrapment lacks merit.  The Tenth Circuit has already rejected Mr. Robinson's argument that the government engaged in sentencing entrapment:

> Defendant reached out to Brooke/Nikki and put in motion the plan to pursue a "business partnership.". . .  Defendant claims Tangeman "induced" him to commit a different crime solely so the government could unfairly seek an enhanced sentence.  But his claim is without merit.  The government offered Defendant several opportunities to call off his plans with Nikki. . . .  Defendant provides no evidence that excessive government involvement existed in the creation of the crime nor does evidence support significant governmental coercion to induce the crime.

*Robinson*, 993 F.3d at 851.  The Court finds that Mr. Robinson has not shown any prejudice by counsel's alleged failure to argue sentencing entrapment because the defense has been rejected by the Tenth Circuit.

Mr. Robinson has also not shown prejudice by his counsel's failure to request a lesser-included offense instruction.  Mr. Robinson argues that the jury should have been given a lesser-included offense instruction, which would have allowed the jury to convict him of a violation of 18 U.S.C. § 2421, but acquit him of the charge brought under 18 U.S.C. § 1591.  Docket No. 215 at 7.  However, Mr. Robinson was charged with a violation of 18 U.S.C. § 2421, as well as a violation of 18 U.S.C. § 1591, and the jury was instructed on the elements of both offenses.  Docket No. 142 at 17–18.  As a

8

practical matter, the jury could have acquitted Mr. Robinson of the child sex trafficking offense and convicted him of the prostitution offense, but did not. Therefore, Mr. Robinson has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Honie*, 58 F.4th at 1189.

Furthermore, Mr. Robinson cannot show that his counsel's performance fell below an objective standard of reasonableness in failing to request a lesser-included offense instruction because Mr. Robinson was not entitled to such an instruction. The Tenth Circuit applies a four-part test in determining whether a lesser-included-offense instruction should be given: (1) the defendant must make a proper request; (2) the elements of the lesser-included offense must be a subset of the elements of the charged offense; (3) the element required for the greater, charged offense, which is not an element of the lesser offense, must be in dispute; and (4) the evidence must be such that the jury could rationally acquit the defendant of the greater offense and convict him of the lesser offense. *United States v. Bruce*, 458 F.3d 1157, 1162 (10th Cir. 2006). The elements of the 18 U.S.C. § 2421 offense are not a subset of the elements of the 18 U.S.C. § 1591 offense. Section 1591 makes it a crime for a person to solicit a minor by any means if he knew or recklessly disregarded the fact that the minor was under the age of eighteen and would be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a); Docket No. 142 at 15. Section 2421 makes it a crime for a person to knowingly transport an individual with the intent that such an individual engages in prostitution. 18 U.S.C. § 2421(a). Because § 2421 has a mens rea of specific intent, while § 1591 requires only recklessness, § 2421 is not a lesser-included offense of

9

§ 1591.  *See United States v. Townsend*, 521 F. App'x 904, 908–09 (11th Cir. 2013) (unpublished) (18 U.S.C. § 2421 "is not a lesser-included offense of the sex trafficking counts because [it] requires intent that the victim engage in prostitution or other illegal sex acts, whereas the trafficking counts require only knowledge or reckless disregard of the fact that a victim will be caused to engage in commercial sex.") (citing *United States v. Brooks*, 610 F.3d 1186, 1195 (9th Cir. 2010)).  As such, Mr. Robinson was not entitled to a lesser-included offense instruction and he was not prejudiced by his counsel's failure to request the instruction.

  Mr. Robinson asserts that the defendant in another case similarly solicited to work as a prostitute a person whose profile was created by Investigator Tangeman. Docket No. 215 at 7.  Mr. Robinson alleges that Investigator Tangeman did not claim to be underage while talking with that defendant, and therefore the defendant was given a plea offer of twelve months.  *Id.*  To the extent that Mr. Robinson challenges the fairness of Investigator Tangeman's different tactics, the Tenth Circuit has already found that Investigator Tangeman's actions were permissible.  *Robinson*, 993 F.3d at 850–51.  To the extent that Mr. Robinson argues that his attorney was ineffective because he should have brought the similarities of his case to the attention of the U.S. Attorney's Office, Mr. Robinson has not shown that his attorney's conduct was unreasonable.  Assuming that Investigator Tangeman did not indicate the supposed woman's age to the defendant in Case No. 18-cr-00265-RM, that was not the case with Mr. Robinson.  As Mr. Robinson acknowledged on cross-examination, Mr. Robinson asked, "Brooke you're how old?" and "Brooke" said "17."  Docket No 169 at 105, 461:8–9.  Thus, Mr. Robinson was not similarly-situated to the defendant in Case No. 18-cr-00265-RM, and therefore

his counsel was not ineffective in not informing himself about and then using the facts of that case to obtain a favorable plea bargain.

### C. Witness from Hi5 or Tagged

Mr. Robinson argues that he received ineffective assistance of counsel because his attorney failed to call a representative from either Hi5 or Tagged, the dating websites through which Mr. Robinson contacted "Nikki." Docket No. 215 at 8. Mr. Robinson claims that such a witness would have shown that the websites had a policy requiring users to attest that they are at least eighteen years old.[1]  *Id.*  Mr. Robinson alleges that, given this age requirement, "there was no reason to believe that Defendant was online specifically to recruit a minor" and that testimony from a Hi5 or Tagged witness would have "cast doubt on the actions and testimony of the FBI agent[ ] inten[t] to establish the predisposition of Defendant to the charged offense of Attempted Sex Trafficking of a Child." *Id.*

Mr. Robinson has not shown that his counsel's failure to call a witness from Hi5 or Tagged was prejudicial. While testimony from such a witness would have shown that the website had a policy of prohibiting underage users, Mr. Robinson's testimony at trial shows that, once Investigator Tangeman told Mr. Robinson that he was not an eighteen-year-old named Brooke, but a seventeen-year-old named Nikki, Mr. Robinson believed that the person he was talking to was seventeen and nevertheless continued to solicit her to work for him. *See, e.g.,* Docket No. 169 at 67, 74, 80, 105, 423:10–24,

---

[1] To the extent that Mr. Robinson again challenges Investigator Tangeman's choice to tell Mr. Robinson that he was a seventeen-year-old, which, if true, would have violated the terms of the website's policy, the Tenth Circuit has determined that Investigator Tangeman's actions were permissible. *Robinson*, 993 F.3d at 850–51.

11

430:3–6, 436:1–9, 461:8–15.  Given that Mr. Robinson testified that he believed that he was talking to a seventeen-year-old and continued to pursue a "business partnership" with her, the fact that Mr. Robinson was not initially "online specifically to recruit a minor" is irrelevant, as is the website's age policy.[2]  Furthermore, both Investigator Tangeman and Mr. Robinson testified to the website's age policy.  *See* Docket No. 167 at 69:19–70:13; Docket No. 169 at 56, 65, 412:5–23, 421:2–7.  Mr. Robinson does not identify any additional information that a Hi5 or Tagged witness could have testified to that might have altered the jury's verdict.  Mr. Robinson has not shown there is a reasonable probability that, but for his counsel's failure to call a witness from these websites, the result of his trial would have been different.  *Honie*, 58 F.4th at 1189.  Because Mr. Robinson has failed to show that he was prejudiced by any acts or omissions made by his counsel, the Court denies his motion.  *Strickland*, 466 U.S. at 687.

### D. Certificate of Appealability and Evidentiary Hearing

Under Rule 11(a) of the Section 2255 Rules, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under 28 U.S.C. § 2253(c)(2), the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  Such a showing is made when "a prisoner demonstrates 'that jurists of reason would find it debatable' that a constitutional violation occurred, and that the district court erred in its

---

[2] Mr. Robinson also argues that the website's age policy would have cast doubt on the government's claims at trial that minors use dating websites for adults.  Docket No. 220 at 4.  Again, Mr. Robinson's testimony that he understood the person he was soliciting to be a minor is sufficient to support his conviction, regardless of whether other minors use the website.

resolution." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  In the present case, the Court concludes that Mr. Robinson has not made a substantial showing of the denial of a constitutional right.  Therefore, the Court will deny a certificate of appealability.

A court shall hold a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).  The Court finds that Mr. Robinson's motion and the files and records of the case conclusively show that he is entitled to no relief.

## IV. CONCLUSION

For the reasons discussed above, it is

**ORDERED** that Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 USC § 2255 [Docket No. 215] is **DENIED**.  It is further

**ORDERED** that, under 28 U.S.C. § 2253(c)(2) and the Rules Governing Section 2255 Proceedings for the United States District Courts, a certificate of appealability is **DENIED**.

DATED April 8, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge